IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

| | | |
|---|---|---|
| RONALD O. LATRAY, | ) | Cause No. CV 06-03-BU-SEH-RKS |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |
| KATIE DONATH; STEVE ETTA; JACK HARRINGTON, | ) ) ) | |
| Defendants. | ) ) | |

Plaintiff Ronald LaTray initiated this action on January 10, 2006. On August 6, 2006, United States Magistrate Judge Carolyn S. Ostby entered an Order permitting Plaintiff to supplement his Complaint. He did so on September 5, 2006. He is a state prisoner proceeding pro se and in forma pauperis. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I. Preliminary Screening**

Pursuant to the federal statutes governing proceedings in forma pauperis and proceedings by prisoners, federal courts must engage in a preliminary screening of cases to assess the merits of the claims. 28 U.S.C. §§ 1915(e)(2), 1915A(a); 42 U.S.C. § 1997e(c)(1); Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc). The court must identify cognizable claims, or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

a claim upon which relief can be granted, or if the complaint seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A(b); 42 U.S.C. § 1997e(c)(1).

Although the statute requires a dismissal for the reasons stated, it does not deprive the district court of its discretion to grant or deny leave to amend. Lopez, 203 F.3d at 1127. The court can decline to grant leave to amend if "it determines that the pleading could not possibly be cured by the allegation of other facts." Id. (quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)). Leave to amend is liberally granted to pro se litigants unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (citing Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980)). Additionally, the courts must liberally construe pro se pleadings. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

**II. Plaintiff's Allegations**

Plaintiff alleges that the Defendants, who are all probation officers, violated his right to due process and his First Amendment right to contact public officials or petition for redress of grievances.

Plaintiff alleges that Defendants Etta and Donath unlawfully deprived him of the use and benefit of his truck on the grounds that one condition of his release was that he not drive. No such condition was set forth in the criminal judgment. See Compl. (Court's doc. 3-1) at 4, ¶ IV.A(1); Supp. (Court's doc. 7) Ex. B (Judgment) at 3-4, ¶ 10. Plaintiff avers that he was found to have violated the conditions of his release and was returned to prison based, "in part," on the fact that he used his truck. Compl. Attachment at 2, ¶ 7. He also contends that, as a result of the condition's

imposition, he suffered extreme cold and illness because he had to ride his bicycle to work, id. at 5, ¶ V; Compl. Attachment (Court's doc. 3-2) at 1, and that he was deprived of his property without due process because he turned in the vehicle title to avoid prosecution, see Supp. at 2, ¶ 7.

Plaintiff also alleges that Defendant Harrington violated his First Amendment rights by intercepting a call he placed to the Montana Board of Pardons and Parole, instructing him not to call the Board again, and implying that adverse consequences would follow if he did so.  Plaintiff also claims that Defendant Harrington violated his rights under the First Amendment by preventing him from contacting the Parole Board about the condition in question.  See Supp. at 2, ¶ 8; Compl. at 4, ¶ IV.A(2).

For his relief, Plaintiff seeks compensatory damages for costs incurred as a result of not being able to use his truck, the cost of replacing his vehicle, and court costs.  He also seeks punitive damages of $100.00 per day "for each Defendant commensurate with their dates of involvement." Id. at 5, ¶ VI.  In his Supplement, he requests $25,000.00 against Defendant Harrington in punitive damages.  See Supp. at 3, ¶ 13.

**III. Analysis**

An action filed by a prisoner or by a person proceeding in forma pauperis may be dismissed before service if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**A. Due Process Claims**

Plaintiff's Supplement and the attached exhibits clarify a few important matters.  First,

Plaintiff was on parole, not on probation.[1]  See Supp. Ex. C at 1.  Second, although Plaintiff was accused of violating three conditions – that he not drink, not drive, and not travel without permission – his parole was revoked based on his violation of only one condition: he drank.  See id.  Third, his car was subject to towing as an abandoned vehicle, and he relinquished the title to avoid prosecution.  See Supp. at 2, ¶ 7.  Fourth, none of the conditions of his parole stated that he must forfeit ownership of property.  Id.; see also Supp. Ex. D at 1-2 ("Conditions"); compare Supp. Ex. B at 3, ¶ 9 (criminal judgment authorizing seizure and forfeiture of vehicle owned and operated by Plaintiff at the time of the offense).

Under Montana law, as Plaintiff rightly points out, a conditions of *probation* that infringe upon constitutional rights may only be imposed by the sentencing court.  See, e.g., State v. Field, 11 P.3d 1203, 1206 ¶ 15 (Mont. 2000) (discussing Mont. Code Ann. § 46-18-801 (1987), as amended by 1995 Mont. Laws, ch. 555, § 6).[2]  The condition that Plaintiff not drive is not a condition of his probation.  See Supp. Ex. B at 3-4, ¶ 10.

Conditions of *parole*, by contrast, may be imposed by the Montana Board of Pardons and Parole.  See Mont. Code Ann. § 46-23-215(1), (2) (2007).[3]  A parole is an early release from a

---

[1] Plaintiff said in his Complaint that he was on parole, but he also stated that his parole was revoked based on a condition that was not included in the sentencing court's judgment.  As explained below, under Montana law, only conditions of probation, not conditions of parole, are set forth in criminal judgments.

[2] In 2001, the Montana Legislature created a mandatory condition of probation for persons convicted of Plaintiff's crimes: "the person may not operate a motor vehicle unless authorized by the person's probation officer."  Mont. Code Ann. § 61-8-731(3)(e) (2001) (now subsection (4)(e)).  That provision does not apply to Plaintiff, however, because he was sentenced on September 3, 1999, before the mandatory condition became effective.  See Supp. Ex. B at 5.

[3] This statute has not been amended in any respect that is material here since at least 1982.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 4

lawfully imposed prison term; if the criminal judgment were controlling, there would be no parole at all. Because parole is a matter of grace and not a matter of right, the Board may require a parolee to observe any conditions it believes are necessary to ensure that he or she "is able and willing to fulfill the obligations of a law-abiding citizen." See Mont. Code Ann. § 46-23-201(5) (2007); id. § 215(1), (2); see also, e.g., Bailleaux v. Cupp, 535 F.2d 543, 546 (9th Cir. 1976) (finding no constitutional violation in legislation permitting Oregon Parole Board to impose conditions on parolees).

While the Montana Supreme Court might one day extend the protections of Mont. Code Ann. § 46-18-801 to limit the conditions of parole that may be set by the Board, federal law does not require it to do so. An action under 42 U.S.C. § 1983 lies only for violations of federal law, not for violations of state law or policy. See Ove v. Gwinn, 264 F.3d 817, 824 (9th Cir. 2001); Walker v. Sumner, 14 F.3d 1415, 1419-20 (9th Cir. 1994), overruled on other grounds by Sandin v. Conner, 515 U.S. 472, 483-84 (1995).

Under long-established federal law, the conditions imposed on Plaintiff are considered typical of those imposed on parolees. In Morrissey v. Brewer, 408 U.S. 471 (1972), still the United States Supreme Court's leading case on parole, the Court mentioned those conditions specifically:

> To accomplish the purpose of parole, those who are allowed to leave prison early are subjected to specified conditions for the duration of their terms. These conditions restrict their activities substantially beyond the ordinary restrictions imposed by law on an individual citizen. Typically, parolees are *forbidden to use liquor* . . . . Typically also they must seek permission from their parole officers before engaging in specified activities, such as changing employment or living quarters, marrying, acquiring or *operating a motor vehicle*, *traveling outside the community*, and incurring substantial indebtedness. Additionally, parolees must regularly report to the parole officer to whom they are assigned and sometimes they must make periodic written reports of their activities. . . .

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 5

> The enforcement leverage that supports the parole conditions derives from the authority to return the parolee to prison to serve out the balance of his sentence if fails to abide by the rules. In practice, *not every violation of parole conditions automatically leads to revocation. Typically, a parolee will be counseled to abide by the conditions of parole*, and the parole officer ordinarily does not take steps to have parole revoked unless he things that the violations are serious and continuing so as to indicate that the parolee is not adjusting properly and cannot be counted on to avoid antisocial activity.

Id. at 478-79 (emphases added).

Everything Plaintiff describes as happening in his own case was typical even at the time of Morrissey. Plaintiff could not drink, drive, or travel while he was in prison. To impose the same conditions on his early release, therefore, does not curtail his rights or liberties to any greater extent than would be the case if the sentence imposed by the judge were carried out.

To put the matter in the language of a more recent case, Plaintiff has suffered no hardship that might be considered atypical or significant in light of the conditions usually imposed on parolees. See Sandin v. Conner, 515 U.S. 472, 483-84 (1995). The Sandin test determines whether a State's laws or practices give rise to a federally protected liberty interest, and therefore to a right to due process. However, the case has been cited in other contexts, see, e.g., McKune v. Lile, 536 U.S. 24 (2002) (plurality op.), to "underscore the axiom that a convicted felon's life in prison differs from that of an ordinary citizen." Id. at 37. Likewise, Morrissey recognizes that a parolee's life on parole differs from that of an ordinary citizen.

While "[t]here is no iron curtain drawn between the Constitution and the prisons of this country," Wolff v. McDonnell, 418 U.S. 539, 555 (1974); see also Morrissey, 408 U.S. at 496, prisoners' and parolees' rights are significantly curtailed. See Wolff, 418 U.S. at 556 (imposing lesser due process standard on prison disciplinary hearing than on criminal trial); Morrissey, 408

U.S. at 480-81 (imposing lesser due process standard on parole revocation hearing than on criminal trial). See also United States v. Knights, 534 U.S. 112, 119 (2001) (probationers "do not enjoy the absolute liberty to which every citizen is entitled.") (internal quotation omitted); Samson v. California, __ U.S. __, 126 S. Ct. 2193, 2198 (2006) ("[P]arolees enjoy even less of the average citizen's absolute liberty than do probationers.") (internal quotation omitted). When the conditions under which prisoners or parolees live are neither atypical nor significant for persons in their situation, and neither cruel nor unusual, see, e.g., United States v. Gementera, 379 F.3d 596, 608-09 (9th Cir. 2004),[4] there is no violation of the Federal Constitution.

Plaintiff's allegations suggest that the condition prohibiting him from driving was cruel and imposed a significant hardship because, as a practical matter, he was compelled to ride a bicycle under harsh weather conditions. See Compl. Attachment at 1, ¶¶ 1-8. He was not, however, unlawfully compelled to do so. For example, the right of a convicted sex offender to associate with his family is not violated merely because his family lives near a school and he is prohibited from living within a certain distance of a school or child care facility. See Doe v. Miller, 405 F.3d 700, 709-11 (8th Cir. 2005). The burden imposed on Plaintiff in this case was far less. In addition, while he has a constitutional right to travel, see Saenz v. Roe, 526 U.S. 489, 500-01 (1999), Morrissey considered restrictions on that right "typical" and well within the competence of a parole board to

---

[4] There is reason to question whether a condition of parole could even be viewed as "punishment." The condition at issue in Gementera was a condition of supervised release, which is part of a federal criminal sentence and is not the same thing as parole. However, because the conditions of which Plaintiff complains are neither cruel nor unusual, it is not necessary to resolve that question.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 7

impose.  Plaintiff has no fundamental constitutional right to travel by driving.[5]

While Plaintiff has a fundamental constitutional protection against being deprived of his property without due process or compensation, see Chicago, B. & Q. R. Co. v. City of Chicago, 166 U.S. 226, 241 (1897), none of the Defendants in this case deprived him of his car.  Plaintiff alleges that he was permitted to own a vehicle.  See Supp. at 3, ¶ 11.  That he could not drive it did not amount to a taking.  He could have put it into storage or sold it or rented it to someone else.  Moreover, a State does not effect a taking where it restricts the uses of property in order to abate a public nuisance.  See, e.g., Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 491 (1987).  Plaintiff's convictions show that he created a public nuisance when he operated a motor vehicle.  See CON Network, http://app.mt.gov/conweb (last accessed June 8, 2007) (showing convictions for criminal endangerment and fourth-offense DUI).  See also Supp. Ex. B at 2 ("The Court is greatly concerned about the endangerment of others on the highways due to the defendant's driving.").  "Long ago it was recognized that all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community."  Id. at 491-92 (quoting Mugler v. Kansas, 123 U.S. 623, 665 (1887)) (internal quotation marks omitted).

Plaintiff also alleges that the informal hearings that took place between him and one or more of his supervising officers "were not supposed to be utilized" because state law provides that "a parole violator must answer to the Board of Pardons/Parole."  Supp. at 1, ¶ 4.  Such hearings are described in Morrissey as "typical."  As Plaintiff says, "[t]hey are held in [Probation/Parole] office

---

[5] The Supreme Court has held that "certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." Roberts v. United States Jaycees, 468 U.S. 609, 617-18 (1984).  The Supreme Court has never used similar words to describe driving.

to determine whether to violate a person for a violation." Supp. at 1, ¶ 2. Far from being a burden on Plaintiff's rights, the hearings of which he complains were designed to give him additional chances to comply with the conditions of his parole before he was "violated," that is, before his violations were reported to the Board with a recommendation that parole be revoked. Moreover, Morrissey itself requires that a preliminary hearing be held "in the field," that is, near the site of the alleged violation(s) to determine whether there is probable cause to revoke a parolee's release. The Board is not meant to be the deciding entity in that case. See Morrissey, 408 U.S. at 485-86; see also Mont. Admin. Code 20.2.208-.211 (eff. Jan. 22, 1977). Ultimately, the Board, not Plaintiff's supervising officers, revoked his parole. See Supp. Ex. C at 1; Morrissey, 408 U.S. at 487-88.

In sum, Plaintiff suffered no legally cognizable harm to his constitutional rights either while he was on parole or upon revocation of his parole as a result of the imposition of the condition that he not drive or any other condition of his release on parole.[6]

**B. First Amendment Claim**

"[W]here a plaintiff alleges discrete acts of . . . intimidation [by a law enforcement officer] directed solely at silencing her or him, a civil rights claim will lie." Mendocino Environmental Ctr. v. Mendocino County, 14 F.3d 457, 464 (9th Cir. 2004) (internal quotation marks omitted).

Plaintiff, however, does not say that Defendant Harrington attempted to silence him. He alleges that Defendant Harrington said, "You are not to *call them* at any time for any reason." Supp. at 2, ¶ 8 (emphasis added). Neither the original Complaint nor the Supplement allege that Defendant

---

[6] Because Plaintiff's parole was revoked on the grounds that he drank, and not on the grounds that he drove or traveled, it does not appear that a judgment in Plaintiff's favor would necessarily imply the invalidity of the revocation of his parole. For that reason, the Court has not applied the rule of Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 9

Harrington prohibited Plaintiff from challenging the conditions of his parole. Judge Ostby specifically asked Plaintiff to explain "how . . . Harrington prevent[ed] him from *writing to* or calling the officials." Order Permitting Supplementation (doc. 6) at 5. Moreover, Exhibit J to Plaintiff's Supplement is plainly a written communication with the Board's Executive Director about the conditions of Plaintiff's parole. Plaintiff's First Amendment right to petition was not violated.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1. Plaintiff's Complaint and Supplement (docs. 3, 7) should be DISMISSED WITH PREJUDICE for failure to state a claim on which relief may be granted.

2. The docket should reflect that Plaintiff's filing of this action counts as one strike for failure to state a claim, pursuant to 28 U.S.C. § 1915(g).

3. Pursuant to Fed. R. App. P. 24(a)(4)(B), the district court should CERTIFY that any appeal from its disposition would not be taken in good faith.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff may serve and file written objections to this Findings and Recommendations within twenty (20) days[7] of the date entered as indicated on the Notice of Electronic Filing. A district judge will make a de novo determination of those portions

---

[7] In prisoner cases, this Court extends the time to object to twenty days in order to take into account the somewhat greater mailing time that is involved in sending documents into and out of a prison facility.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 10

of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge.

<u>Plaintiff must immediately inform the Court of any change in his mailing address.</u>  Failure to do so may result in dismissal of this case without notice to him.

DATED this <u>18th</u> day of June, 2007.

/s/ Keith Strong
Keith Strong
United States Magistrate Judge